UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD EUGENE MITCHELL,<br><br>    Petitioner,<br><br>vs.<br><br>MATTHEW MARTEL, Warden,<br><br>    Respondent. | Civil No.   10-cv-0963 GPC (DHB)<br><br>**REPORT AND RECOMMENDATION RE:**<br><br>**DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.    INTRODUCTION**

Petitioner Donald Eugene Mitchell, a state prisoner proceeding with counsel with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenges his conviction in San Diego County Superior Court Case No. SCD124983 for false imprisonment by violence. [ECF No. 1].[1]

The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse, the lodgments, the record, and all other documents submitted by both parties. For the reasons discussed below, the Court recommends the Petition be **DENIED**.

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

## II.   FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parle v. Fraley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> At about 4:30 a.m. on October 26, 1996, Grace Estep was walking on Market Street in the City of San Diego. Estep was walking from a friend's residence to a methadone clinic on Home Avenue. During that walk, Estep encountered Mitchell, who called to her. Estep recognized Mitchell as someone she had seen the day before. He appeared to be drunk.
>
> Mitchell was dressed in a football jersey with a number on it and had his hair in "jheri curls." He demanded that Estep go with him and when she attempted to get around him he firmly grabbed her.
>
> Mitchell pulled Estep toward the Chollas Elementary School across the street. After a distance Estep managed to pull free from Mitchell by slipping out of her jacket. She ran away by jumping over a nearby fence. Estep returned to retrieve her jacket and Mitchell again approached her. Estep managed to get away and run to the nearby welfare office where she called police.
>
> Estep was an admitted heroin user who described herself as being five feet three or four inches tall and weighing one hundred fifteen pounds to one hundred twenty pounds.
>
> Estep went with police officers in search of her assailant. When she observed Mitchell she identified him for police. When he was arrested Mitchell was wearing a football jersey bearing the number 55 on it. Mitchell was described by police as five feet eleven inches tall weighing two hundred twenty pounds.
>
> *Defense*
>
> Mitchell called two friends to testify that he had been dropped off at a night club in the area that evening and had not obtained a ride home. A third witness, a friend of Estep, testified she did not recall that Estep had stayed with her the night before the attack. She also said Estep never told her about the attack.

(Lodgment No. 6 at 2-3.)

/ / /

/ / /

## III. PROCEDURAL BACKGROUND

On February 13, 1997, the San Diego County District Attorney's Office filed an information charging Donald Eugene Mitchell with one count of attempted kidnapping, within the meaning of California Penal Code (Penal Code) §§ 664/207, and one count of false imprisonment by violence, within the meaning of Penal Code §§ 236/237. (Lodgment No. 1 at 0001.) The information also alleged Mitchell had suffered a prior conviction for which he served time in prison, within the meaning of Penal Code § 667.5, two prior serious felony convictions, within the meaning of Penal Code §§ 667(a)(1) and 1192.7(c)(19) and (27), and three prior serious or violent juvenile convictions, within the meaning of Penal Code § 1170.12, California's Three Strikes law. (*Id.* at 0002.)

Following a jury trial, Mitchell was convicted of false imprisonment by violence; the jury was unable to reach a verdict on the kidnapping charge. (*Id.* at 0063-64.) After a court trial, the trial judge dismissed the two serious felony prior convictions, but found Mitchell had suffered the prison prior and three prior "strike" convictions as alleged in the information. (Lodgment No. 2, vol. 4 at 225-39.) Mitchell was sentenced to twenty-five years-to-life in prison. (Lodgment No. 1 at 0135.)

Mitchell appealed his conviction to the California Court of Appeal, which affirmed his conviction in a written, unpublished opinion. (Lodgment Nos. 3-6.) Mitchell then filed a petition for review in the California Supreme Court, which denied the petition without citation of authority on September 30, 1998. (Lodgment No. 8.)

Mitchell filed a petition for writ of habeas corpus in the California Supreme Court raising the claims he raises in his current federal petition. (Lodgment No. 9.) The state supreme court denied the petition citing *In re Robbins*, 19 Cal. 4th 770, 780 (1998), *In re Swain*, 34 Cal. 2d 300, 304 (1949), and *People v. Duvall*, 9 Cal. 4th 464, 474 (1995).

Mitchell filed a federal habeas corpus petition in this Court on May 3, 2010. (ECF No. 1.) Counsel was appointed for Mitchell after significant questions regarding

his mental health and capacity became apparent. (ECF Nos. 13-14, 18, 35.) A motion to dismiss based on timeliness was denied on April 17, 2012, but the case was remanded back to the Magistrate Judge for further proceedings on the issue of whether Mitchell's claims are procedurally defaulted. (ECF No. 50.)

On May 1, 2013, the Magistrate Judge issued a briefing schedule directing the parties to address the procedural default question as well as the merits of Mitchell's claims. (ECF No. 51.) Respondent filed an Answer on July 29, 2013, and Mitchell filed a Traverse on September 19, 2013. (ECF Nos. 54, 58.)

## IV. DISCUSSION

Mitchell raises two claims in his Petition. First, he contends counsel was ineffective for failing to investigate the victim's prostitution record and cross-examine her about that record. Second, he alleges trial counsel was ineffective for failing to request a competency hearing. (Pet. at 4-5, ECF No. 1; Lodgment No. 9 at 3.) Respondent asserts the Petition is untimely, but only to preserve the issue, recognizing the Court has already determined the petition is timely. (Mem. of P. & A. Supp. Answer at 11.) In addition, Respondent argues the claims are procedurally defaulted, and that they are, in any event, without merit. (*Id.* at 14-22.)

A. *Procedural Default*

Respondent contends Mitchell has procedurally defaulted his claims because the state court denied his habeas corpus petition with citations to *Robbins*, *Swain*, and *Duvall*. (Mem. of P. & A. Supp. Answer at 14, ECF No. 54.) As Respondent correctly notes, the United States Supreme Court has concluded California's timeliness bar, as enunciated in *Robbins*, is an independent and adequate procedural bar. *See Walker v. Martin*, 562 U.S. __, 131 S. Ct. 1120, 1128 (2011). Mitchell must therefore establish cause for the default and prejudice as a result of the default to excuse it and for this Court to consider his claims on the merits. *Id.* at 1127.

In *Martinez v. Ryan*, 566 U.S. __, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 569 U.S. __, 133 S. Ct. 1911 (2013), the Supreme Court carved out a narrow exception

to the general rule of *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) that a lack of counsel or an attorney's ineffectiveness in postconviction review does not establish cause for a petitioner's procedural default. The Supreme Court concluded in *Martinez* and *Trevino* as follows:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 U.S. at 1320.

Mitchell asserts his default should be excused because he raised ineffective assistance of trial counsel claims in his initial collateral review proceeding — his November 3, 2009, state habeas corpus petition — that were substantial and he was not represented by counsel in that proceeding. *Martinez*, 132 S. Ct. at 1320; *Trevino*, 133 S. Ct. at 1921. (Traverse at 8-13, ECF No. 58.)[2] The Supreme Court stated in *Martinez* that a claim will be deemed "substantial" if it has "some merit," citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003), and referring to the description in that case of the standards for issuing a certificate of appealability (COA). *Id*. at 1318-19. In *Miller-El*, the Court described the COA standard thus: "'The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).)

It is undisputed Mitchell was not represented at his initial collateral review proceeding. In addition, given the large amount of evidence lodged with the Court documenting Mitchell's mental illness — more than 600 pages — the Court concludes Mitchell's claim that counsel was ineffective for failing to request a competency hearing

---

[2] Mitchell also argues that if the Court does not agree *Martinez* excuses Mitchell's procedural default, his "prolonged and severe mental illness" constitutes cause for his default. (Traverse at 12-13, ECF No. 58.) Because the Court concludes *Martinez* applies, it does not reach this issue.

is a substantial one in that reasonable jurists would find the state court's assessment of the claim "debatable or wrong." *Id.* Thus, Mitchell has met his burden under *Martinez*, and this Court will address the merits of that claim. As to Mitchell's claim that counsel was ineffective when he failed to cross-examine the victim about her history of or conviction for prostitution, the Court finds he has not established the claim is substantial. However, because the parties were directed to brief the merits of Mitchell's claims and have done so, the Court will address the merits of that claim as well. *See Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998); *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982).

C. *Merits*

Mitchell asserts in claim one that trial counsel was ineffective for failing to cross-examine the victim, Grace Estep, regarding a possible conviction for prostitution. In claim two, Mitchell contends trial counsel was ineffective for failing to request a competency hearing. (Pet. at 4-5, ECF No. 1; Traverse at 15-22, ECF No. 58.)

1. *Standard of Review*

Mitchell raised these claims in a habeas corpus petition he filed in the California Supreme Court on November 3, 2009. (*See* Lodgment No. 9.) Respondent contends the state court's rejection of the claims citing *Robbins*, *Swain*, and *Duvall* is a decision on the merits, and thus this Court must determine whether the state court's denial of the claim is contrary to, or an unreasonable application of, clearly established Supreme Court law. (*See* Mem. of P. & A. Supp. Answer at 11-14, ECF No. 54.) Mitchell argues the claims were denied on procedural grounds, and thus, because there is no state court decision to which this Court can defer, the claims should be reviewed *de novo*. (Traverse at 14-15, ECF No. 58.)

Mitchell's petition was denied on grounds that it was untimely (*Robbins*) and because it failed to state a prima facie case for relief (*Swain* and *Duvall*). Both the United States Supreme Court and the Ninth Circuit have indicated a California Supreme Court denial on grounds that a petitioner has failed to state a prima facie case for relief

is a ruling on the merits of the claims, and such denials are to be reviewed under AEDPA's deferential standard. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 (2011); *Sully v. Ayers*, 725 F.3d 1057, 1067, n. 4 (9th Cir. 2013). Because it is a summary denial, however, this Court must conduct an independent review of the record to determine whether the state court's denial of the claims was contrary to, or an unreasonable application of, clearly established Supreme Court law. *Delgado*, 223 F.3d at 982.

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. He must also show he was prejudiced by counsel's errors. Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993). Further, *Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Strickland*, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 686-87. The Court need not address both deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

2. *Failure to Cross-Examine the Victim Regarding a Prostitution Conviction*

Following her direct testimony at trial, Mitchell's counsel sought to recall the victim, Grace Estep, to question her about prior convictions for prostitution. The trial judge refused to permit Estep to be recalled, concluding that under California Evidence Code section 352 it was more prejudicial than probative because Estep's credibility had already been questioned by the admission of her drug and methadone use and because

it would involve undue consumption of time because Estep would have to be recalled. (Lodgment No. 2, vol. 2 at 135-36.) The prosecutor then told the judge that there was a question as to whether Estep had any convictions that could be used to impeach her:

> MS. McREYNOLDS: I just want to indicate one thing for the record. I have not pulled her case file. It looks like it's actually a 657b [prostitution]; [and Business and Professions Code] 149, possession of paraphenalia. It appears to me that neither of them have been adjudicated. The 149 case appears to be in warrant status as of March '96, and it appears that the prostitution case was dismissed. However, I have not had a chance to pull those records.
>
> THE COURT: Have you actually pulled the record?
>
> MR. SMALL: I talked to counsel about it. We crossed her out. At the preliminary hearing she admitted she had a convictions. She also admitted an influence conviction, but they weren't recent. If these are something new, recent, she may have additional matters; but at the time of the preliminary hearing when she admitted to those offenses, she admitted them as convictions, and she admitted that they were recent. So, if there's a showing of something knew [sic] that I haven't gotten yet, we may need to pull what new facts she has.
>
> MS. McREYNOLDS: I'm just going with the print [out] that I have . . . The prostitution charge was from 1987, which has now been dismissed, apparently; and the other one is from '96 which is March 20th of '96. And it was the possession of paraphenalia charge. I remember her saying at the preliminary hearing she had an [Health and Safety Code] 11550 conviction [for being under the influence of a controlled substance], but I have not yet been able to find one.

(*Id.* at 138.)

Mitchell correctly points out that under California law, misdemeanor conduct that constitutes a crime of moral turpitude is admissible to impeach a witness, and prostitution is a crime of moral turpitude. *See People v. Wheeler*, 4 Cal. 4th 284, 297 (1992); *People v. Chandler*, 56 Cal. App. 4th 703, 709 (1997). Thus, Mitchell contends that even if Estep did not have a prostitution conviction, her misdemeanor prostitution conduct would have been admissible to impeach her credibility, and counsel was ineffective for failing to question Estep about it during direct examination. Had he done so, Estep would have either admitted she had a prostitution conviction or arrest, or would have denied it, at which point counsel could have impeached her with her preliminary hearing testimony. Either way, according to Mitchell, Estep's credibility

would have been called into question. (Traverse at 17-18, ECF No. 58.)

The Court agrees it is difficult to discern a tactical reason for not cross-examining Estep about the possibility she had been arrested for or convicted of prostitution. As Mitchell notes, counsel's attempt to recall Estep in order to question her about possible prostitution activity suggests he was attempting to correct an error on his part. Mitchell has not, however, shown he was prejudiced by counsel's error. At trial, Estep testified she was walking to a methadone clinic about 4:30 in the morning when someone she thought she knew called to her. (Lodgment No. 2, vol. 2 at 15.) The person then attacked her and tried to drag her towards a nearby elementary school. (*Id.*) After successfully getting away, she ran to the welfare office a half a block away from the attack and called 911. Officers arrived within two minutes. (*Id.* at 25.) She testified her attacker had a "jheri curl" hairdo and a jersey with the number 59 on it. (*Id.* 17.) Officer Brian Baumer testified she later gave a fuller description to police of her attacker as an African American man with a "jheri curl" hairdo, 170 to 180 pounds, five feet nine inches to six feet tall, wearing a football jersey with the number 55 on it. (*Id.* 54.) She was very upset and distraught while talking to police. (*Id.* at 53-54.) Within three minutes of the call going out, police spotted a person who fit Estep's description about three blocks from where she was assaulted. (*Id.* at 13, 77.) The suspect, later identified as Mitchell, had a jheri curl hairdo and was wearing a football jersey with the number 55 on it. (*Id.* at 78.) Mitchell was taken to a curbside lineup about five minutes later. (*Id.*) Estep identified Mitchell as the person who had grabbed her and was "absolutely positive" it was him. (*Id.* at 103.)

On cross-examination, defense counsel successfully impeached Estep with various inconsistencies in her story, including how long it took for her to walk to the methadone clinic, what time the methadone clinic opened on Saturdays, and other details of her story. (*Id.* at 33-47, 49-50, 61-62, 64, 98, 107.) In addition, defense counsel called into question Estep's claim that she had spent the night at a house on Craigie Street the night before the assault which belonged to her friend Curtis

1   Blackman. (*Id*. at 15.) Detective Gutierrez testified that in a follow up interview, Estep
2   told him she had spent the night at her sister's house. (*Id.* at 99-101, 107-08.) The
3   defense called Estep's sister, Denise Williams, to testify Estep never told her about the
4   attack. (Lodgment No. 2, vol. 3 at 153-54.) Williams also testified that she did not
5   think Estep had spent the night at her house the night of the attack, and that, in any
6   event, if she had she would not have been able to get out of the house at 4:00 or 4:30
7   in the morning because her husband locked the door from the inside and would hear
8   anyone who tried to use the key to unlock the door. (*Id*. at 154-55, 157-58.)

9     Estep's credibility was sufficiently challenged at trial, including her past heroin
10  addiction, current methadone use, and inconsistencies in her statements about the attack.
11  Even if counsel had confronted Estep with a prostitution conviction, a prostitution arrest
12  or activity, or inconsistent testimony from her preliminary hearing, there is no
13  "reasonable probability that, but for counsel's unprofessional errors, the result of the
14  proceeding would have been different." *Strickland*, 466 U.S. at 694. Mitchell was
15  detained within a few blocks and within minutes of the attack on Estep and matched
16  Estep's description of her attacker very closely. Estep was positive Mitchell was the
17  individual who grabbed her and tried to drag her toward the elementary school. Under
18  these circumstances, the Court cannot conclude counsel's failure to cross-examine Estep
19  about prostitution would have made any difference in the jury's verdict, and thus the
20  state court's denial of the claim was neither contrary to, nor an unreasonable application
21  of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Mitchell is
22  not entitled to relief as to this claim.

23    3. *Failure to Request a Competency Hearing*

24    Mitchell also faults counsel for failing to request a competency hearing. (Pet. at
25  5, ECF No. 1.) The Supreme Court has held that "a person whose mental condition is
26  such that he lacks the capacity to understand the nature and object of the proceedings
27  against him, to consult with counsel, and to assist in preparing his defense may not be
28  subjected to a trial.'" *Drope v. Missouri*, 420 U.S. 162, 171 (1974). A defendant must

have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and a rational as well as factual understanding of the proceedings against him.'" *Id*. at 172 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960).) "'[W]here the evidence raises a "bona fide doubt" as to a defendant's competence to stand trial, the trial judge on his own motion must . . . conduct a hearing to determine competency to stand trial.'" *Torres v. Prunty*, 223 F.3d 1103, 1106-07 (9th Cir. 2000) (quoting *DeKaplany v. Enomoto*, 540 F.2d 975, 979 (9th Cir. 1976) (en banc).)

"A claim that counsel was deficient for failing to move for a competency hearing will succeed only 'when there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (internal quotation marks omitted).) Moreover, "[c]ompetence 'has a modest aim: It seeks to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel.'" *Deere v. Cullen*, 718 F.3d 1124 (9th Cir. 2013) (quoting *Godinez*, 509 U.S. at 402).)

It appears the mental health records submitted by the parties to this Court have never been submitted to the state court in support of this claim. The Court has considered those records, however, in determining whether the petition was timely, whether Mitchell was entitled to equitable tolling, and whether Mitchell had met his burden of alleging a "substantial claim" under *Martinez*. Normally, evidence that was not before the state court deciding a claim cannot be considered by a federal court hearing that claim on federal habeas review. *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 1400 (2011). It is not clear, however, whether this Court can consider those records in its resolution of the claim once it has considered them to decide whether a petitioner has met his burden under *Martinez*. As discussed below, however, even if the

1 Court does consider those records, Mitchell has not established the state court's denial
2 of this claim was contrary to, or an unreasonable application of, clearly established
3 Supreme Court law. *Williams*, 529 U.S. at 412-13.

4       A large volume of psychiatric records have been provided to the Court in
5 Mitchell's case. Lodgment Nos. 11-14 consist of approximately 600 pages of
6 psychiatric records which date from 1999 until 2010. They clearly show Mitchell has
7 had significant mental health problems while in prison, but they do not shed much light
8 on whether Mitchell was incompetent at the time of his 1997 trial and that counsel was
9 ineffective for failing to request a competency hearing.

10       Lodgment No. 15 contains more of Mitchell's mental health records, some of
11 which are closer in time to his 1997 trial. Those records also show Mitchell has a
12 history of mental illness but also of manipulation and drug-seeking behavior. In May
13 of 1994, a psych team determined that Mitchell did not have a major mental illness, but
14 rather was seeking medication. (Lodgment No. 15 at 25-27, 51.) He was able to answer
15 questions about his social background and substance abuse history, and the prison
16 psychiatric staff determined "he presented himself in an exaggerated manner and may
17 of his symptoms were inconsistent with major mental illness." (*Id.* at 27.) In December
18 of 1995, however, he was transferred out of general population into psychiatric
19 observation due to "unusual and inappropriate behavior." (*Id.* at 20.) He seemed to
20 improve after medication, but in March and April, prison officials initiated two "crisis
21 calls" in response to Mitchell's behavior, which included non-stop talking and claims
22 that his tongue was having seizures. (*Id.* at 32.) Psychiatric staff indicated he had
23 "malingering medical symptoms." (*Id.*) In June of 1996, shortly before his release on
24 parole in September of 1996, Mitchell was "alert and cooperative" during a visit by a
25 prison psychiatrist. (Lodgment No. 15 at 3.) He was "functioning well" and discussing
26 plans for his parole. (*Id.* at 2-3.) Mitchell was paroled on September 19, 1996.
27 (Lodgment No. 1 at 107.)
28 / / /

At his 1997 trial, Mitchell responded to the trial judge on several occasions appropriately, confirming his name, and stating he did not understand what a bifurcated trial was when asked. (Lodgment No. 2, vol. 2 at 1.) During trial, counsel conferred with Mitchell about whether he was going to testify. (*Id.* at 135.) Mitchell also conferred with counsel about whether he wanted to be present while counsel and the judge discussed the jury instructions, and Mitchell responded "yes" when the trial judge's confirmed with him that he wanted to stay. (*Id.* at 141.) The next day, counsel told the judge he had discussed the matter of including lesser included offenses in the jury instructions after court had concluded the preceding day. Mitchell had told counsel he did not want the lesser included offenses given to the jury:

> THE COURT: My understanding is that the defense theory is one of identification, and as a tactical reason you want to keep focused on just the two counts and not have the LIO [lesser included offense] or the LRO [lesser related offense]?
>
> MR. SMALL: That's correct.
>
> THE COURT: Mr. Mitchell, you've heard your attorney's explanation, that is a change from yesterday. Is that a correct statement of your current position?
>
> MR. MITCHELL: Yeah.
>
> THE COURT: Now, you understand that the two lesser crimes, the misdemeanors, let's call them, so we're on the same discussion, that the two misdemeanors would not be considered by the jury unless the jury had found you not guilty of the felonies. So that it's not four crimes just being presented, that it's they have to deal with the two felonies. If they found you not guilty on those, then they would move to making a determination of guilty or not guilty on the respective lesser, which is — one is an LIO, meaning included, and one being a related. Do you understand the distinction?
>
> MR. MITCHELL: Yes, I do.
>
> THE COURT: And do you understand if in fact they were to find you guilty of only the misdemeanors, that the sentencing parameters would be different and would be lesser than they would be on the felonies? Do you understand that?
>
> MR. MITCHELL: Yes.
>
> THE COURT: Having all that in mind, you, for tactical reasons, do not want to have included either the lesser included as to count one of the battery or basically as to both counts, I guess as to the battery and as to

> count two, the false imprisonment without the violence addition. Is that correct, sir?
>
> MR. MITCHELL: Yes, it is.
>
> THE COURT: Do you have any questions of me or your attorney?
>
> MR. MITCHELL: No.

(Lodgment No. 2, vol. 3 at 144-45.)

During a later discussion between defense counsel and the judge regarding defense counsel's offer of proof as to two witnesses, Mitchell twice interjected, once in an attempt to correct a date counsel and the judge were discussing and once to explain how the second witness would testify. (*Id.* at 148-49.) Mitchell again responded appropriately when the trial judge asked whether he understood he had a right to a jury trial on the validity of his prior convictions and that he waived that right. (Lodgment No. 2, vol. 4 at 225-26.) He also tried to interject information to clarify the factual basis for those prior convictions during the bench trial, and when told by the trial judge that he could not speak out, complied. (*Id.* at 236-37.) As Mitchell points out, however, Mitchell's mother told the judge at his sentencing that Mitchell had a brain embolism about 13 years prior for which he had surgery, and eventually began taking street drugs when the pain medication stopped working. (*Id.* at 242.) She also told the court Mitchell had spent nine months at Patton State Psychiatric Hospital following his first conviction, had been diagnosed as a paranoid schizophrenic, he was on psychotropic medication and "[could] not function like you and I." (*Id.* at 242, 245.)

All in all, the record clearly shows Mitchell is mentally ill, and has been for some time. But the record does not clearly show that Mitchell was so obviously incompetent that by not requesting a competency hearing, "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. As detailed above, the record shows Mitchell responded appropriately when asked questions by the judge and was able to confer with counsel regarding whether to testify in his own defense and what jury

instructions should be given. The record also establishes Mitchell was able to follow and understand the proceedings. That is all that competency requires. *See Deere*, 718 F.3d at 1144 (stating competence only requires "that [the defendant] has the capacity to understand the proceedings and to assist counsel"). The record before the Court does not provide "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt defendant's competency . . . .", or that "there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." *Hibbler*, 693 F.3d at 1149. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. Mitchell is not entitled to relief as to this claim.

## V.     CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Petition be **DENIED**.

**IT IS FURTHER RECOMMENDED** the Court issue an Order (1) approving and adopting this Report and Recommendation, (2) directing that judgment be entered denying the Petition.

**IT IS HEREBY ORDERED** no later than **January 21, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than **February 4, 2014**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED:  December 19, 2013

_____
DAVID H. BARTICK
United States Magistrate Judge